# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: D.H., D.R., and A.R

No. 17-0627 (Calhoun County 16-JA-19, 16-JA-20, & 16-JA-21)

**FILED**

**December 1, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.R., by counsel Rebecca Stollar Johnson, appeals the Circuit Court of Calhoun County's June 15, 2017, order terminating her parental rights to D.H., D.R., and A.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Tony Morgan, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and terminating her parental rights to the children when a less-restrictive dispositional alternative existed.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2016, the DHHR filed an abuse and neglect petition against petitioner alleging that petitioner knowingly exposed her children to the risk of sexual abuse. Specifically, the petition alleged that petitioner and the children continued to reside with petitioner's live-in boyfriend, B.P., after petitioner knew that the boyfriend had sexually abused D.H. The petition further alleged that petitioner was frequently intoxicated, failed to properly supervise and protect the children, and that the children were exposed to domestic violence in the home. In November of 2016, the DHHR filed an amended petition alleging that D.H. was also sexually abused by a neighbor.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

In March of 2017, after a number of continuances, the circuit court held an adjudicatory hearing wherein D.H.'s in-camera testimony was presented. D.H. disclosed that petitioner's boyfriend, B.P., sexually abused her by touching her breasts and repeatedly exposing her to pornography. Trooper Brandon Shingleton testified that after he searched petitioner's home as a part of his investigation of the sexual abuse allegations, he recovered a pornographic digital versatile disk ("DVD") which D.H. identified as the movie petitioner's boyfriend showed her. The child's psychologist testified that thirteen-year-old D.H. is functioning on an eight-year-old level due to cognitive deficits. The psychologist also testified that D.H. disclosed to her that petitioner's boyfriend fondled her breasts and repeatedly exposed her to pornography.

Petitioner testified that she continued her relationship with her boyfriend, B.P., and did not believe D.H.'s disclosures of sexual abuse. She also testified that she believed that D.H. was exposed to pornography at the public library. Petitioner admitted that she was aware of the pornography DVD found in her home and that her boyfriend lived in the home at the time the allegations arose but stated that she believed that "it was just a coincidence." Petitioner further testified that she did not believe that D.H. was telling the truth because D.H. had a "problem with lying" and that she had no concerns about her boyfriend. A DHHR caseworker testified that D.H. disclosed to her that she witnessed a domestic violence incident between petitioner and her boyfriend wherein the boyfriend pulled petitioner's hair and threatened to kill the whole family. At the close of the evidence, the circuit court adjudicated petitioner as an abusing parent and found that there was clear and convincing evidence that petitioner's boyfriend sexually abused D.H. In May of 2017, petitioner filed a motion for a post-adjudicatory improvement period.

In June of 2017, the circuit court held a dispositional hearing wherein petitioner testified that she continues her relationship with B.P. and that he "is an innocent man who has been charged and put in jail because of D.H.'s lies." At the conclusion of the hearing, the circuit court denied petitioner's motion for an improvement period, finding no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of petitioner's parental rights was consistent with the best interests of the children. Ultimately, the circuit court terminated petitioner's parental rights to the children by an order entered on June 15, 2017.[2] It is from this order that petitioner now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

---

[2]Petitioner's parental rights to the children were terminated below. According to the guardian and the DHHR, D.R. and A.R. were placed in the sole custody of their non-offending, biological father, J.R. Also, D.H. was placed in the custody of her biological father, R.H., who is currently on an improvement period.

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues on appeal that she should have been granted a post-adjudicatory improvement period because the "testimony in this case indicates that D.H. was prone to make up stories and tell fibs when she was angry or did not get her way." We disagree. Petitioner's argument ignores important portions of the adjudicatory hearing wherein petitioner illustrated her continued failure to acknowledge the conditions that gave rise to the matter. In order to obtain a post-adjudicatory improvement period, West Virginia Code § 49-4-610(2)(B) requires that the parent "demonstrate[], by clear and convincing evidence, that [the parent] is likely to fully participate in an improvement period . . . ." Further, we have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").

Here, petitioner failed to prove by clear and convincing evidence that she was likely to substantially comply with the terms and conditions of a post-adjudicatory improvement period because the circuit court was presented with evidence that petitioner continued her relationship with her boyfriend, did not believe D.H.'s disclosures of sexual abuse, and had no concerns about her boyfriend because she did not believe D.H. was telling the truth. In keeping with our prior holdings, we have stated that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Simply put, petitioner's failure to acknowledge the conditions of abuse resulted in her inability to establish that she was likely to fully participate in an improvement period, as required by West Virginia Code § 49-4-610(2)(B). As such, we

find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

Petitioner also argues that the circuit court should have imposed a less-restrictive dispositional alternative and not terminated her parental rights. However, petitioner's argument ignores the circuit court's findings regarding her failure to acknowledge the abuse in the home, the fact that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future, and that termination was necessary for the children's welfare. Specifically, the circuit court found that petitioner testified that D.H. was a "liar" despite its finding that her boyfriend sexually abused D.H. As previously stated, the abuse of a child cannot be remedied unless its existence is first acknowledged. See *In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013).

Given petitioner's refusal to accept that her boyfriend sexually abused D.H., the circuit court was correct in finding that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future. Moreover, the circuit court was similarly correct in finding that termination of petitioner's parental rights was necessary to protect the children's health, safety, and welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings.[3] Accordingly, we find no error in the termination of petitioner's parental rights.

---

[3]This Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

Syl. Pt. 6, *Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Moreover, this Court has stated that

(continued . . . )

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 15, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  December 1, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

5